# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, IN THEIR CAPACITIES AS TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NOTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DIVERSIFIED CONCRETE CUTTING, INC., <br><br> Defendant. | Case No. 17-cv-06938-MEJ <br><br> **ORDER FOR REASSIGNMENT WITH REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 25 |

## INTRODUCTION

Plaintiffs, The Board of Trustees, in their capacities as Trustees of the Laborers Health and Welfare Trust Fund for Northern California; Laborers Vacation-Holiday Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; and Laborers Training and Retraining Trust Fund for Northern California move the Court pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendant Diversified Concrete Cutting, Inc. ("Diversified"). *See* Mot., Dkt. No. 25. No response has been received from Defendant. *See* Docket. Because the undersigned finds this matter suitable for disposition without oral argument, it **VACATES** the July 12, 2018 hearing pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-(1)(b).

After carefully reviewing the motion and controlling authorities, the undersigned issues this Report and Recommendation. The undersigned **RECOMMENDS** the District Court **GRANT** the Motion for Default Judgment for the reasons set forth below. Further, because no consent to magistrate judge jurisdiction has been filed by Defendant, the Clerk of Court shall **REASSIGN** this case to a district court judge for disposition.

**BACKGROUND**

Plaintiffs are the Board of Trustees for the Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California (the "Trust Funds"). Compl. ¶ II, Dkt. No. 1. Each of the Trust Funds, created by written Trust Agreements, is an employee benefit plan subject to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c), and a multi-employer benefit plan within the meaning of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002, 1003, and 1132. *Id.* The Trust Funds are administered by Plaintiffs, who are authorized to bring this action on behalf of the Trust Funds pursuant to the express provisions of the Trust Agreements. *Id.*

Diversified is a Nevada corporation doing business in the State of California as a contractor. Lauziere Decl. ¶ 6 & Exs. B & C, Dkt. No. 26. Plaintiffs allege that Diversified is an employer as defined in ERISA, 29 U.S.C. §§ 1002(5), 1145, and that Diversified is an employer in an "industry affecting commerce" within the meaning of the LMRA, 29 U.S.C. § 185. Compl. ¶ III.

Plaintiffs seek unpaid employee fringe benefit contributions, liquidated damages and interest for delinquent contributions, attorneys' fees and costs, and an injunction requiring an audit of Diversified's books and records. *See* Compl.; Mot.

**DISCUSSION**

**A. Jurisdiction and Service of Process**

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

1. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the

action. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 (granting labor union organizations power to sue employers in Federal court) and 29 U.S.C. § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms).

2. Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963 F.2d 1301, 1306 (9th Cir. 1992). Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011).

Diversified is a Nevada corporation doing business in California. Lauziere Decl. ¶ 6 & Ex. B. The Court can exercise personal jurisdiction over Diversified pursuant to ERISA Section 502(e)(2). Under Section 502(e)(2), an action may brought against a defendant "… in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2); *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261 (9th Cir. 1992); *Schuett v. FedEx Corporation Retirement Appeals Comm.*, 2015 WL 4484153, at *5 (N.D. Cal. July 22, 2015) ("[S]ervice on a defendant in an ERISA case anywhere in the United States is sufficient to establish personal jurisdiction, and there is no need to engage in the 'minimum contacts' analysis") (emphasis added); *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

Here, the Court may properly exercise personal jurisdiction over Diversified because the Trust Funds are administered in the Northern District of California, which is also where the breach—the obligation to remit contributions—took place. Compl. ¶ I.

3

3. <u>Service of Process</u>

The Court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the West v. RMA Lumber Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

Plaintiff served Diversified on December 12, 2017 by personally serving copies of the summons, complaint, and accompanying documents, on CT Corporation System, Defendant's registered agent for service of process. *See* Proof of Service, Dkt. No. 10; *see also* Lauziere ¶ 6 & Ex. C. Service on Diversified was adequate.

**B. Legal Standard – Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

**C. Application to the Case at Bar**

1. <u>The Possibility of Prejudice to Plaintiffs</u>

The first factor the Court considers in determining whether to grant a default judgment is the possibility of prejudice to Plaintiffs if a default judgment is not entered. *Eitel*, 782 F.2d at

1471-72. Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy. *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916 (C.D. Cal. 2010) (concluding the plaintiff would suffer prejudice if default judgment was not entered where the plaintiff had only received partial payment owed under a contract).

The first factor, possibility of prejudice to the Plaintiffs, favors default judgment, since Plaintiffs will have no other alternative means of recovering damages following the entry of default. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Indeed, they declare they have attempted to collect amounts due but that Defendant has refused to pay the contributions, liquidated damages and interest owed. Lauziere Decl. ¶ 16.

2. <u>Substantive Claims and the Sufficiency of the Complaint</u>

The second and third *Eitel* factors require the Court to look at the merits of the substantive claims and the sufficiency of the allegations in the Complaint. *Eitel*, 782 F.2d at 1471-72.

In this case, Plaintiffs' claims arise from the Diversified's breach of the Agreements. See Compl. ¶ VII (alleging Defendant failed to make complete, timely contribution payments, and these contributions remain unpaid). When Diversified failed to pay the contributions corresponding to the employer reports of contributions Diversified remitted, Diversified created a cause of action under the Agreements and ERISA section 515, which provides that:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Accepting all factual allegations as true, Plaintiffs have stated a claim for relief, and therefore weigh in favor of entry of default judgment. *Eitel*, 782 F.2d at 1472.

In addition to the unpaid contributions, Plaintiffs are entitled to interest, liquidated damages, and reasonable attorneys' fees and costs of the action pursuant to the Trust Agreements and ERISA. 29 U.S.C. § 1132(g)(2). Liquidated damages provisions in collective bargaining agreements, such as the one at hand, are enforceable under federal common law and not void as a penalty. *Idaho Plumbers v. United Mechanical Contractors*, 875 F.2d 212, 217 (9th Cir. 1989)

5

(liquidated damages clauses will be enforced and not void as penalty where (1) harm caused by breach is very difficult to estimate, and (2) amount fixed is reasonable forecast of just compensation for harm caused). Plaintiffs allege the liquidated damages are not penalties but a reasonable attempt to provide payment for the breach, where it is extremely difficult to ascertain those losses. Compl. ¶ V.

Not only does the above show that the allegations set forth in the Complaint are sufficient to state a claim under Federal Rule of Civil Procedure 8(a), but the claims are further substantiated by the factual record. Lauziere Decl. ¶¶ 3-16; *Id.*, Exs. A-G. As discussed above, Plaintiffs have offered evidence that Diversified entered into a Collective Bargaining Agreement with the Union which bound it to the Trust Agreements incorporated therein by reference. Lauziere Decl. ¶ 7, Exs. D & E. The Agreements impose liability on delinquent employers for liquidated damages, unpaid interest and attorney's fees in addition to any unpaid contributions. Lauziere Decl. ¶¶ 9-10, 12-13; *Id.*, Ex. A at ECF pp. 10-1, 14 (Health and Welfare Trust Fund, Art. II § 10 & Art. IV § 3); ECF pp. 39-40, 43 (Pension Trust Fund, Art. II § 10 & Art. IV § 3); ECF pp. 69-70, 74 (Vacation-Holiday Trust Fund, Art. II § 10 & Art. IV § 3); and ECF pp. 101-02, 105 (Laborers' Training and Retraining Fund, Art. II § 10 & Art. IV § 3), Dkt. No. 26-1.

Thus, Plaintiffs have shown that they have a claim on which they may recover not only unpaid contributions, but the other monetary relief they request in the Complaint.

3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

The fourth factor considers the amount of money at stake. *Eitel*, 782 F.2d at 1471-72. Plaintiffs request a total of $15,427.26 in unpaid contributions, a total of $7,127.44 in liquidated damages and interest, as well as attorneys' fees in the amount of $9,355 and costs in the amount of $503.55 for the work involved in seeking these amounts. *See* Mot. This amount is tailored to Diversified's specific misconduct and supported by evidence in the record. The amount sought here is appropriate for default judgment.[1] *See Church Bros., LLC v. Garden of Eden Produce, LLC*, 2012 WL 1155656, at *3 (N.D. Cal. Apr. 5, 2012) ($212,259.21 deemed "modest" and "far less than [the $2.9 million] contemplated by the court in *Eitel*"). This factor, therefore, supports the entry of default judgment.

4. The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)).

Moreover, Plaintiffs support their claims with sworn declarations establishing that the claims for unpaid contributions are based on Diversified's own contribution reports. *See* Lauziere Decl. ¶¶ 14-15 & Exs. F-G.

As a result, this factor weighs in favor of default judgment.

5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's failure to respond to the Complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72.

Diversified was properly served with the Summons, Complaint and the record does not contain any evidence to suggest that Defendant's failure to appear and defend against this action was excusable. Defendant was also served with Plaintiffs' Request for an Entry of Default on March 1, 2018 (Docket No. 17), but failed to appear in this action. Defendant also was served with Plaintiff's Motion for Default Judgment (Dkt. No. 30), with the undersigned's Order re:

---

[1] Once the audit is conducted, Plaintiffs indicate they will seek to collect any contributions found due and owing, and therefore request that the Court retain jurisdiction.

1  Motion for Default Judgment (Dkt. No. 34), and most recently with Plaintiff's Proposed Findings
2  of Fact and Conclusions of Law (Dkt. No. 33).

Despite being served with the Complaint and the pending Motion, Defendant made no appearance in this matter and failed to respond. There is nothing in the record suggesting this failure is based on excusable neglect. *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). Thus, this factor supports default judgment.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted). Similarly, other courts found default judgment is appropriate when a defendant refuses to litigate a case. *See, e.g., Board of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010) ("[A]lthough federal policy does favor a decision on the merits, Rule 55(b) allows entry of default judgment in situations such as this, where the defendant has refused to litigate.")

Here, Defendant has refused to pay contributions despite attempts by Plaintiffs to collect the amounts due (Lauziere Decl. ¶ 16), and has not participated in the proceedings since Plaintiffs filed suit. As such, a decision on the merits would not be possible. In situations such as this, Rule 55(b) allows the court to grant default judgment. This final factor weighs in favor of granting the Motion.

### 7. Summary of the *Eitel* Factors

Based on the foregoing analysis, the undersigned finds each of the *Eitel* factors weighs in favor of granting default judgment. Accordingly, the undersigned **RECOMMENDS** the District Court **GRANT** the Motion and enter default judgment against Defendant.

**D. Relief Sought**

After determining liability, the Court then calculates the amount of damages that should be awarded. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012). This two-step process is proper because while for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages. *Id.*

The relief sought here is explicitly authorized by ERISA. When an employee benefit plan obtains judgment in its favor in an action under 29 U.S.C. § 1132(g)(2), "the court shall award the plan –

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent […]
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate."

1. Damages

    a. *Delinquent and unpaid contributions*

Under the terms of the Master Agreement, all unpaid contributions are delinquent and subject to a 1.5% interest rate per month, along with a liquidated damages fee of $150.00 per month. Lauziere Decl., Ex. D at § 28(A), Dkt. No. 26-4. Plaintiffs' Complaint gave Diversified notice of the claims for unpaid contributions outstanding at the time the Complaint was filed in the amount of at least $46,779.54 and related liquidated damages and interest in the amount of at least $1,458.79. Compl. ¶ VII.

Defendant currently owes $15,427.26 in delinquent fringe benefit contributions for this contributions reported without payment during the period June 2017 through February 2018, inclusive. Lauziere Decl. ¶ 14 & Ex. F, Dkt. No. 26-6. The amounts have been substantiated by Plaintiffs' Accounts Manager, Michelle Lauziere. Lauziere Decl. ¶¶ 3-16, Exs. A-G.

Diversified's failure to pay the delinquent contributions to the Laborers Trust Funds violates ERISA Section 515, which provides that:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Accordingly, Plaintiffs are entitled to recover $15,427.26 from Diversified in unpaid contributions for the months of June 2017 through February 2018. Lauziere Decl. ¶¶ 14-15 & Ex. F.

### b. *Liquidated damages and interest*

In addition, Plaintiffs request an award of liquidated damages and interest under Section 1132(g)(2)(C) for these unpaid contributions. "It is settled Ninth Circuit law that [an award under Section 1132(g)(2)(C)] is mandatory and not discretionary." *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (noting that the statutory language in Section 1132(g)(2)(C) that "the court shall award the plan" the greater of interest or liquidated damages). For a mandatory award under section 1132(g)(2), three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996); *Id.* at 258 ("mandatory fees are available under section 1132(g)(2) 'notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.'") (quoting *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F.2d 1170, 1175 (5th Cir. 1985)); *cf. Idaho Plumbers*, 875 F.2d at 217 (holding 29 U.S.C. § 1132(g)(2) is not applicable to late-paid contributions where no contributions were "unpaid" at the time of suit).

Plaintiffs here have satisfied these three requirements. First, as alleged in the Complaint, Diversified was delinquent at the time Plaintiffs filed their lawsuit. Compl. ¶ VII. Second, the undersigned has recommended the District Court enter a judgment against the employer. Third,

10

the plan provides for such an award. Plaintiffs calculated the liquidated damages and interest amounts due at the Trust Funds' standard rate. An award of liquidated damages is appropriate under the statute.

Because the liquidated damages and interest amounts are recoverable under ERISA, the Trust Funds are entitled to liquidated damages of $1,050.00 and interest of $6,077.45 based on contributions reported but not paid corresponding to the months of June 2017 through January 2018. Lauziere Decl. ¶¶ 14-15 & Ex. G.

2. Attorneys' Fees

Pursuant to both 29 U.S.C. § 1132(g)(2)(D) and the Trust Agreements, Plaintiffs are entitled to attorneys' fees and costs incurred in this suit. *See supra*. Plaintiffs ask for an award of $9,355 in fees, representing 30.25 hours of attorney and paralegal time expended in this case through June 7, 2018 and $503.55 in costs.[2] Mainguy Decl., Ex. A. ¶ 5, Dkt. No. 27. Plaintiffs' entitlement to recover fees and costs is supported by ERISA §502(g)(2) (29 U.S.C. § 1132(g)(2)(D)) and the relevant Agreements. The Agreements provide that if an employer fails to abide by the terms of the agreement with regard to fringe benefit payment and legal consultation is sought by the Board of Trustees, reasonable attorneys' fees, costs, and all other expenses incurred in enforcing collection will be paid by the delinquent employer. *See supra*. Diversified thus is liable for the reasonable cost of attorneys' fees and costs incurred by the Trust Funds in seeking to collect the delinquencies and compel the audit at issue. *See Kemner v. District Council of Painting and Allied Trades No. 36*, 768 F.2d 1115, 1120 (9th Cir. 1985).

Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable fee is determined by multiplying (1) "the number of

---

[2] Plaintiffs actually request $10,980.00, which includes the $9,355.00 in fees incurred through the filing of the proposed findings of fact and conclusions of law, in addition to $1,625.00 in fees of anticipated work associated with Plaintiffs' Motion for Default Judgment, which includes an appearance at the hearing on the motion for default judgment and follow-up work regarding the judgment entered by the Court. *See* Mot. at 5, 13-14. The request for fees for anticipated work is not sufficiently supported. *See* Mainguy Decl. ¶¶ 5, 7-8 & Ex. A. For this reason, and because Defendant did not oppose the Motion and the undersigned vacated the hearing, the undersigned does not recommend granting the $1,625 in fees for anticipated work.

hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar amount may also be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

Plaintiffs substantiated their request with a declaration and a description of the work performed to date. Mainguy Decl. ¶ 5 & Ex. A. Plaintiffs also describe the qualifications of the attorneys and paralegals who performed work on the case. *Id.* ¶¶ 6, 9-12. The majority of the work on the matter was performed by Tracy Mainguy, who was admitted to practice in California in 1995 and spent the next 13 years practicing labor law before working on different types of matters; she rejoined a labor law practice in 2015. *Id.* ¶ 6. In light of this experience, Ms. Mainguy's hourly rate of $345 is reasonable and in line with those prevailing in the community. *See, e.g., Board of Trs. v. Lineation Markings Corp.*, 2015 WL 4999850, at *1, *4 (N.D. Cal. Aug. 21, 2015) (adopting report and recommendation in full, including fees based on reasonable rates of $145-$345 for Ms. Mainguy and her colleagues for work performed in 2015); *Board of Trs. v. Michael Heavey Constr., Inc.*, 2015 WL 5241759, at *1, *5 (N.D. Cal. Sept. 8, 2015) (same). The rates sought by other time-keepers ($345 for another shareholder and $145 for senior paralegals) are similarly justified.

Finally, Plaintiffs document the work performed, and the thirty hours requested are modest in comparison with the amount at stake in the case. Based on counsel's Declaration and the attached billing records, the fees requested in this matter are reasonable.

Based on the foregoing, the undersigned therefore **RECOMMENDS** the District Court **GRANT** Plaintiffs' request for an award of $9,355 in attorneys' fees.

3. Costs

The court will also award costs if "the prevailing practices in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trustees of Contrs. Indus. & Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotation marks omitted); *see* 29 U.S.C. § 1132(g)(2)(D). Plaintiffs submitted evidence that they have incurred $503.55 in costs in the action to date, consisting of filing fees, fees for service,

reproduction costs, research fees, and delivery of courtesy copies. Mainguy Decl. ¶ 8 & Ex. B. The undersigned **RECOMMENDS** the District Court **GRANT** the request for an award of costs in the amount of $503.55.

### 4. Audit

Finally, Plaintiffs request an order requiring an audit of Diversified's books and records from January 1, 2014 to the present in order to determine whether Diversified owes additional amounts. Compl. ¶ XIV; Lauziere Decl. ¶ 11.[3] A collective bargaining agreement may give the Trustees of an employee benefit plan an enforceable right to audit an employer's books and records. *Central States, Se. & Sw. Areas Pension Fund v. Cent. Transp. Inc.*, 472 U.S. 559, 581-82 (1985) ("[W]e have little difficulty holding that the audit requested by Central States is well within the authority of the trustees as outlined in the trust documents"); *see also Board of Trs. v. KMA Concrete Constr. Co.*, 2011 WL 4031136, at *8 (N.D. Cal. Aug. 12, 2011) (recommending court order defendant to submit to an audit in accordance with terms of collective bargaining agreement), *adopted*, 2011 WL 4031100, at *1 (N.D. Cal. Sept. 8, 2011). Here, pursuant to Article IV § 7 of each Trust Agreement, Plaintiffs have the right to compel an audit to ensure compliance with the Agreements: "Upon receipt of a written request from the Board, an Individual Employer agrees to permit an auditor designated by the Board to . . . examine and copy books, records, papers, or reports of that Individual Employer necessary to determine whether that Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund." Lauziere Decl., Ex. A at Art. IV § 7. Thus, Diversified is contractually obligated to submit to an audit of its financial records to ensure its compliance with the Agreements.

Accordingly, the undersigned **RECOMMENDS** the District Court (1) **ORDER** Diversified to submit to an audit of its records and (2) **RETAIN JURISDICTION** over this matter pending a timely audit to amend the judgment upon a proper showing by Plaintiffs.

---

[3] Plaintiffs also seek an order enjoining Defendant from failing to timely submit required monthly contributions reports and payments. *See* Compl. ¶ XIV § 5. They do not establish their entitlement to such relief. *See* Mot. at 10-14.

**CONCLUSION**

Based on the above analysis, the undersigned RECOMMENDS the District Court GRANT Plaintiffs The Board of Trustees, in their capacities as Trustees of the Laborers Health and Welfare Trust Fund for Northern California, et al.'s Motion for Default Judgment and enter judgment against Defendant Diversified Concrete Cutting, Inc.

The undersigned further RECOMMENDS the District Court award Plaintiffs:

(1) Principal in the amount of $16,477.26, representing unpaid contributions and liquidated damages;

(2) Pre-judgment interest in the amount of $6,077.44;

(3) Attorneys' fees and costs in the amount of $9,858.55, representing $9,355 in attorneys' fees and $503.55 in costs; and,

(4) Retain jurisdiction over the matter and order Diversified to submit to an audit of its records from January 1, 2014 to present.

Plaintiffs shall serve a copy of this Report and Recommendation upon Defendant. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file any objections within 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: July 3, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge

14